UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAPHTALI MILLER (B-41697), | ) |
| Plaintiff, | ) |
| | ) 15 C 6307 |
| v. | ) |
| | ) Judge Gary Feinerman |
| DR. CATHERINE LARRY, SARA CHESCHAREK, and BETH HART, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Naphtali Miller, an Illinois prisoner, brought this *pro se* 42 U.S.C. § 1983 suit against Stateville Correctional Center mental health providers Dr. Catherine Larry, Sara Chescharek, and Beth Hart, alleging deliberate indifference to his serious medical needs. Doc. 12. Defendants have moved for summary judgment. Docs. 80, 87. Miller did not respond, despite having been given ample opportunity to do so. Docs. 93, 97. Defendants' motions are granted.

**Background**

Consistent with the local rules, Defendants filed Local Rule 56.1(a)(3) statements of undisputed facts with their summary judgment motions. Docs. 83, 88. With certain exceptions, the relevant factual assertions in the Local Rule 56.1(a)(3) statements cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants served Miller with Local Rule 56.2 Notices, which explain what Local Rule 56.1 requires of a *pro*

1

*se* litigant opposing summary judgment. Docs. 84, 90. Miller did not file a response brief, Local Rule 56.1(b)(3)(B) responses to the Local Rule 56.1(a)(3) statements, or a Local Rule 56.1(b)(3)(C) statement of additional facts.

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (third alteration in original) (citation and internal quotation marks omitted); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because [the plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have … repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Miller's *pro se* status does not excuse him from following Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir.

2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Accordingly, the court will accept as true the factual assertions set forth in Defendants' Local Rule 56.1(a)(3) statements, except where the statement does not accurately reflect the cited material, and will view the facts and inferences therefrom in the light most favorable to Miller. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with [Local Rule 56.1(b)(3)(C)], the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Cady*, 467 F.3d at 1061; *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). That said, the court is mindful that "a nonmovant's … failure to comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movants] to show that [they are] entitled to judgment as a matter of law." *Raymond*, 442 F.3d at 608 (citations omitted). The court thus will recite the facts in Defendants' Local Rule 56.1(a)(3) statements, as modified when necessary where the statement inaccurately characterizes the cited material, and then determine whether, on those facts, Defendants are entitled to summary judgment.

Miller has been incarcerated in the Illinois Department of Corrections since 2013. Doc. 88 at ¶ 1. The events giving rise to his claims occurred when he was housed at Stateville Correctional Center in Fall 2014. *Id*. at ¶ 2. Hart, a licensed clinical social worker, was assigned to work with Miller. Doc. 83 at ¶ 2. Dr. Larry and Chescharek also worked as mental health providers at Stateville. Doc. 88 at ¶¶ 4-5.

Miller suffers from bipolar disorder and schizophrenia. Doc. 83 at ¶ 7. His conditions were treated with monthly psychotherapy sessions and also with Prozac and Risperdal. *Id*. at ¶ 7. In September 2014, Miller refused to take those medications about 85% of the time because he "felt [he] didn't need them." *Id*. at ¶ 8; Doc. 88 at ¶¶ 9-10 (alteration in original).

On September 18, Miller swallowed "a whole bunch of" ibuprofen and Robaxin, approximately ten pills each, which had been prescribed for pain resulting from playing basketball. *Id*. at ¶ 6; Doc. 83 at ¶ 9. Miller explained he took those pills:

> because I had a treatment plan with Dr. Larry and Ms. Hart that if I didn't cut myself or go on suicide watch that they would transfer me to another facility which was Big Muddy [Correctional Center], and I did all those things that I was supposed to do and when it came time for me to get transferred, they didn't transfer me. They denied it, and I felt that the mental health people lied to me, so I was upset and I was depressed, and I swallowed the pills, and tried to commit suicide.

Doc. 88-1 at 16-17. That day, Hart moved Miller to the health care unit's infirmary and placed him on suicide watch. Doc. 83 at ¶ 10. Suicide watch consists of several levels: 30-minute watch; 15-minute watch; 10-minute watch; and continuous watch, where a prison employee watches the inmate continuously and notes the inmate's activity every five minutes. Doc. 88 ¶¶ 13-14; *see also* Doc. 83-3 at 238.

4

On October 2, Miller was released from the health care unit and placed in a crisis watch cell in X-House with 15-minute checks. Doc. 83 at ¶ 11. Before being placed at X-House, Miller was given a packet of his personal property, which included mail that contained about five standard staples. *Id*. at ¶ 12. Miller removed the staples and hid them from prison staff. *Id*. at ¶ 14. Staff did not notice Miller remove the staples, and he told no one about them. *Id*. at ¶ 13.

That day, Miller used one of the staples to scratch his left arm, and prison staff noticed during a 15-minute check that Miller had scratched his arm with an unknown object. *Id*. at ¶ 15. The scratches "were not too deep … just enough to draw some blood." Doc. 88 at ¶ 20. According to Miller, the scratches could be described as "surface scratches." *Id*. at ¶ 21. He was seen by a nurse and by either Dr. Larry or Chescharek, and was elevated to 10-minute watch status. Doc. 83 at ¶ 15. Miller did not tell mental health workers about the staples. *Id*. at ¶ 20.

On October 3, Miller again scratched himself on the arm with a staple. Doc. 88 at ¶ 27. Like the scratches from the previous day, the October 3 scratches were not deep and could be characterized as surface scratches. *Id*. at ¶ 29. A medical official visited him and, as on October 2, applied a band-aid; a visit from a mental health provider followed. *Id*. at ¶¶ 30-31. Miller does not recall what he told the mental health worker, but he remembers that he did not reveal that he had staples. *Id*. at ¶ 32. According to the mental health worker, Miller complained: "I don't want to be over here … it's too loud, these guys yelling … I want to go back to the hospital. I'm going to keep on until I go back." Doc. 83-3 at 74; *see also* Doc. 83 at ¶ 16. Reporting that Miller was "mostly cooperative and expressive," Doc. 83-3 at 74, the worker's assessment was that Miller was "scratching himself for the purpose of secondary gain," Doc. 83 at ¶ 17.

5

On October 6, Miller again scratched himself. Doc. 88 at ¶ 34. The scratches again were surface scratches. *Id*. at ¶ 35. He was given gauze to clean up the blood and a band-aid. *Id*. at ¶ 36. The bleeding had stopped by the time he applied the band-aid. *Id*. at ¶ 37.

On October 7, Miller met with Chescharek and told her: "I'm going to finish it tonight," and further indicated that "he was going to do what he has to do to get what he wants." Doc. 83 at ¶ 21. Chescharek then placed Miller on continuous watch, and the watch logs contain entries reporting his actions every five minutes. *Id*. at ¶¶ 22-23; Doc. 83-3 at 271-404.

On October 9, while on continuous watch, Miller again scratched his arm with a staple. Doc. 83 at ¶ 24. Again, the scratches were surface scratches, and again there was blood. Doc. 88 at ¶¶ 41-42. No bandage was needed, as the scratches stopped bleeding after being wiped with a tissue. *Id*. at ¶ 43. Miller met with a mental health provider that day, but does not recall which one. *Id*. at ¶ 44. His continuous watch remained in place. *Id*. at ¶ 45.

On October 10, Miller threatened to reopen his scratch wounds. Doc. 83 at ¶ 25. A mental health professional visited that day. *Id*. at ¶ 26. (A mental health provider visited Miller every day he was in X-House. *Ibid*.) On October 11, Miller again scratched himself in the same manner. He again described the scratches as surface scratches and does not know if they drew blood. Doc. 88 at ¶¶ 46-47.

All told, Miller scratched himself between October 2, 2014 and October 11, 2014, and at no other time. *Id*. at ¶ 52. He inflicted no other wounds on himself during that period. *Id*. at ¶ 53. At no time did Miller tell anyone how he was injuring himself, and he never revealed that he had staples. *Id*. at ¶¶ 54-55.

Miller was transferred to Pontiac Correctional Center later that month. *Id*. at ¶ 49. He was taken off suicide watch when he transferred. *Id*. at ¶ 58. On November 15, he submitted his only grievance pertaining to the claims in this suit; the grievance stated that Stateville's mental health care workers never shook down his cell to search for staples. *Id*. at ¶¶ 56-57.

**Discussion**

Miller alleges that Defendants acted with deliberate indifference to his medical needs by failing to prevent him from harming himself, primarily by not moving him out of X-House and by not searching his cell for staples. A prisoner bringing a § 1983 claim for denial of medical and mental health care "must meet both an objective and a subjective component." *Pittman ex rel. Hamilton v. Cnty. of Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014). First, "the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Second, the prisoner must prove that "the individual defendants were deliberately indifferent to the substantial risk." *Ibid*.

As to the first element, the court will assume without deciding that Miller's inflicting mild self-harm with a staple—when considered in light of his swallowing approximately twenty ibuprofen and Robaxin on September 18, 2014, and his October 7, 2014 threat to "finish it tonight"—qualifies as an objectively serious risk of harm. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."); *McIntosh v. Wexford Health Sources, Inc.*, 2017 WL 1067782, at *4 (S.D. Ill. Mar. 21, 2017) ("Suicide, attempted suicide and other acts of self-harm clearly pose a 'serious' risk to an inmate's health and safety, and may provide the foundation for deliberate indifference to medical needs and failure to protect claims.")

(citations omitted); *Granados v. Rasmussen*, 2015 WL 6966041, at *3 (E.D. Wis. Nov. 10, 2015) (holding, on a motion to dismiss, that an inmate's deep cuts to the insides of his arms qualified as a sufficiently serious condition). This assumption is sound given the Stateville medical providers' determination that Miller was a suicide risk. *See Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007) (holding that a condition is objectively sufficiently serious if it has "been diagnosed by a physician as mandating treatment") (citation omitted).

As to the second element, however, no reasonable jury could conclude that Defendants acted with deliberate indifference. The subjective element requires a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (citation omitted). Neither medical malpractice, nor negligence, nor even gross negligence suffices. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). For medical treatment to qualify as deliberately indifferent, the treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). Put another way, the treatment must have been "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. In cases addressing suicide risk, deliberate indifference exists when an official is "subjectively 'aware of the significant likelihood that an inmate may imminently take his own life,' yet 'fail[s] to take reasonable steps to prevent the inmate from performing the act.'" *Pittman*, 746 F.3d at 775-76 (alteration in original) (quoting *Collins*, 462 F.3d at 761); *see also Rice*, 675 F.3d at 682, 685 (noting that the record did not show that prison medical staff "ignored a known medical risk in caring for" the plaintiff).

8

No rational jury could find that Defendants deliberately disregarded Miller's self-harming behavior or the possibility that he might attempt suicide. After Miller swallowed "a bunch" of ibuprofen and Robaxin, he was placed on suicide watch. After the first staple-scratching episode on October 2, a medical technician was contacted for the physical injury and a mental health professional was summoned. Following the mental health provider's visit, Miller's suicide watch was elevated from a 15-minute watch to a 10-minute watch. Although Miller continued to scratch himself with a staple, each episode resulted in minor or no bleeding—necessitating at most a band-aid—for which he received both medical and psychological attention. There is no indication in the record that between October 2 and 7, 2014, Miller harmed himself with anything more than "surface scratches." And on October 7, when he threatened to "finish it tonight," Miller's suicide watch was elevated to continuous watch, which continued for ten days.

Although Miller claims that the Defendants should have searched his cell and/or moved him back to the health care unit from X-House, "mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to state a constitutional claim. *Johnson*, 433 F.3d at 1013. "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. … [T]he Constitution is not a medical code that mandates specific … treatment." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) (citations omitted). On the summary judgment record, it is clear that Miller's claim that his behavior warranted different care is nothing more than a disagreement about the course of treatment implemented by Defendants. But "mere disagreement[]" is not the same as deliberate indifference. *Harper v. Santos*, 847 F.3d 923, 926-27 (7th Cir. 2017). No reasonable jury could find deliberate indifference on these facts. *See Jacoby v. Baldwin Cnty.*, 596 F. App'x

9

757, 764-65 (11th Cir. 2014) (holding that continuing psychiatric medications and elevating suicide watch for a pretrial detainee who cut his throat and swallowed a razor blade was an acceptable course of treatment, and that allegations that additional measures should have been taken indicated at most a difference of opinion, not deliberate indifference); *Brown*, 2017 WL 395229, at *3 (summary judgment granted where prison officials kept an inmate on continuous suicide watch for scratching episodes similar to Miller's).

## Conclusion

For the foregoing reasons, Defendants' summary judgment motions are granted, and judgment will be entered in their favor. If Miller wishes to appeal, he must file a notice of appeal with this court within thirty days from the entry of judgment and pay the $505.00 filing fee. *See* Fed. R. App. P. 4(a)(1). Under Federal Rule of Appellate Procedure 24(a)(1) and 28 U.S.C. § 1915, Miller may move this court to allow him to proceed *in forma pauperis* on appeal, which will allow him to pay that fee in installments. The fee must be paid regardless of the appeal's outcome; however, if Miller is successful, he may be able to shift the cost to Defendants. *See* Fed. R. App. P. 39(a)(3); *Thomas v. Zatecky*, 712 F.3d 1004, 1005 (7th Cir. 2013) ("A litigant who proceeds *in forma pauperis* still owes the fees. If he wins, the fees are shifted to the adversary as part of the costs; if he loses, the fees are payable like any other debt."). If the appeal does not succeed, Miller could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit or appeal a judgment in federal court without prepaying the filing fee, unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

Miller need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if he wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). The time to file a Rule 59(e) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

September 26, 2017

_____
United States District Judge